UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 13-101

PAIGE OKPALOBI                              SECTION "R"


## ORDER AND REASONS

Defendant Paige Okpalobi moves to vacate her sentence under 28 U.S.C. § 2255.[1]  She also moves for appointment of counsel to assist her in these proceedings.[2]  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  For the following reasons, Okpalobi's motions are denied.


## I.    BACKGROUND

On September 25, 2014, Okpalobi was charged in a second superseding indictment with (1) conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1347, 1349 (count one); (2) conspiracy to pay and receive health care kickbacks, in violation of 18 U.S.C. § 371 (count two); conspiracy to falsify records in a federal investigation, in violation of 18 U.S.C. §§ 371, 1519

---

[1]     R. Doc. 426; R. Doc. 445.
[2]     R. Doc. 932.

(count six); and falsifying records in a federal investigation, in violation of 18 U.S.C. §§ 1519, 2 (count seven).[3]  According to the factual basis Okpalobi signed, Okpalobi owned and operated Medical Specialists of New Orleans, Inc. (MSNO).[4]  The factual basis states that Okpalobi obtained Medicare provider numbers for MSNO "so as to allow [it] to submit claims to Medicare and receive payments on those claims electronically."[5]  The factual basis further states that from January 2007 to February 2014, Okpalobi conspired with others to submit claims to Medicare for home health services "that were not medically necessary and/or were not provided."[6]  Finally, the factual basis states that MSNO and the other relevant companies together submitted fraudulent claims to Medicare amounting to approximately $49,989,323.[7]

On February 2, 2015, Okpalobi entered into a plea agreement with the government.[8]  In the agreement, Okpalobi agreed to plead guilty to counts one and six of the second superseding indictment.[9]  Okpalobi also waived her right to appeal her guilty plea, conviction, or sentence, except that she reserved the right to bring a direct appeal of any sentence above the statutory

---

[3]     R. Doc. 114.
[4]     R. Doc. 263 at 1.
[5]     *Id.* at 2.
[6]     *Id.* at 3.
[7]     *Id.* at 4.
[8]     R. Doc. 262.
[9]     *Id.* at 1.

maximum.[10]  In addition, she waived her right to contest her conviction or sentence in any collateral proceeding, including under 28 U.S.C. § 2255, except if she established that ineffective assistance of counsel directly affected the validity of her waiver of appeal and collateral challenge rights or the validity of the guilty plea itself.[11]  In exchange, the government agreed to (1) not bring any other charges in the Eastern District of Louisiana against Okpalobi arising from the subject conduct, (2) dismiss all of the remaining counts against her, (3) a two level decrease in Okpalobi's offense level in the United States Sentencing Guidelines for her timely acceptance of responsibility, under Section 3E1.1 of the guidelines; and (4) move for an additional one level decrease in her offense level, assuming her offense level prior to the reduction was not greater than 16.[12]  The plea agreement also stated that Okpalobi understood that should her plea of guilty be accepted, the maximum penalty she could receive was not more than fifteen years imprisonment.[13]

On February 22, 2017, Okpalobi was sentenced to (1) 120 months imprisonment as to count one, and 42 months imprisonment as to count six,

---

[10]    *Id.* at 2-3.
[11]    *Id.* at 3.
[12]    *Id.* at 1-2.
[13]    *Id.* at 1.

to be served consecutively; (2) three months of supervised release; (3) and restitution—to be paid jointly and severally with her co-defendants—of $44,792,958 to Medicare.[14]  The advisory guideline range for Okpalobi absent the statutory maximum penalties was 262 to 327 months.[15]  But as already addressed, the two counts under which she pleaded guilty had a combined statutory maximum of 180 months imprisonment.[16]

Okpalobi now moves to vacate her sentence under 28 U.S.C. § 2255. She asserts two separate ineffective assistance of counsel claims.[17]  She separately states that her guilty plea should be vacated because she was not competent during her rearraignment hearing, and therefore did not enter into the agreement knowingly.[18]  Finally, while her motion was pending, Okpalobi moved for the Court to appoint her counsel throughout these proceedings.[19]

---

[14]    R. Doc. 769.
[15]    R. Doc. 432 at 30.
[16]    *See id.*
[17]    *See* R. Doc. 864-1; R. Doc. 927.
[18]    R. Doc. 965.
[19]    R. Doc. 932.

## II.    STANDARD OF REVIEW

### A.    28 U.S.C. § 2255

Section 2255 of Title 28 of the United States Code provides that a federal prisoner serving a court-imposed sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Only a narrow set of claims are cognizable on a Section 2255 motion. The statute identifies four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." *Id.* A claim of error that is neither constitutional nor jurisdictional is not cognizable in a Section 2255 proceeding unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

When a Section 2255 motion is filed, the district court must first conduct a preliminary review. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rules

Governing Section 2255 Proceedings, Rule 4(b).  If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action.  *Id.*  The judge may then order the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery.  *Id.*, Rules 6-7.

After reviewing the Government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must determine whether an evidentiary hearing is warranted.  *Id.*, Rule 8.  An evidentiary hearing must be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  No evidentiary hearing is required if the prisoner fails to produce any "independent indicia of the likely merit of [his] allegations."  *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence.  *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).  For certain "structural" errors, relief follows automatically once the error is proved.  *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993).  For other "trial" errors, the court may grant relief only if the

error "had substantial and injurious effect or influence" in determining the outcome of the case. *Id.* at 637-38 (citation omitted); *see also United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht* in a Section 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

### B. Ineffective Assistance of Counsel

To establish a claim of constitutionally ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance, the likely outcome of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). The petitioner must meet both prongs of the *Strickland* test and, if the Court finds that the petitioner has made an insufficient showing as to either prong, the Court may dispose of the claim without addressing the other prong. *See id.* at 697.

As to the first prong of the *Strickland* test, counsel's performance must be compared to "an objective standard of reasonableness, mindful of the strong presumption of adequacy." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th

Cir. 1997). A court should not find inadequate representation merely because, with the benefit of hindsight, the court disagrees with counsel's strategic choices. *Id.* The Fifth Circuit has made clear that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). As to the second *Strickland* prong, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## III. DISCUSSION

### A. Motion to Appoint Counsel

Okpalobi retained counsel in connection with her initial Section 2255 motion.[20] She requested that her counsel withdraw while her motion was pending.[21] She now moves for appointment of counsel.[22]

---

[20] *See* R. Doc. 864.

[21] *See* R. Doc. 932 at 5 (Okpalobi letter to counsel, requesting that he withdraw because of their "different defense strategies").

[22] *See id.*

Prisoners mounting collateral attacks on their convictions do not have a right to counsel under the Sixth Amendment. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). But a court has discretion to appoint counsel to a "financially eligible person" seeking relief under 28 U.S.C. § 2255 when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2). The Court finds that for the reasons stated below, Okpalobi's motion to vacate lacks a legal basis and therefore does not warrant appointment of counsel. *See United States v. West*, No. 09-391, 2017 WL 6325768, at *1 (E.D. La. Dec. 11, 2017) (declining to appoint counsel for Section 2255 motion because collateral attack lacked legal basis).

## B.    Waiver of Appeal Rights

A defendant may waive her statutory right to appeal as part of a plea agreement. *United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995). A waiver of post-conviction relief such as under 28 U.S.C. § 2255 is valid if the waiver is informed and voluntary. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). The defendant must know that she had "a right to appeal [her] sentence and that [she] was giving up that right." *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994) (internal quotation marks and citation omitted). It is the responsibility of the district court "to insure that the defendant fully understands [her] right to appeal and the consequences

of waiving that right." *United States v. Gonzalez*, 259 F.3d 355, 357 (5th Cir. 2001) (quoting *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992)).

Here, the evidence indicates that Okpalobi's plea and waiver were both knowing and voluntary. Okpalobi's signed plea agreement contains an express waiver of her right to appeal or seek relief under Section 2255.[23] In addition, during Okpalobi's rearraignment the Court summarized the indictment,[24] noted the maximum terms of imprisonment under the statute,[25] and specifically questioned Okpalobi about her appeal waiver.[26] The Court asked the lawyers to explain the terms of the plea agreement and Okpalobi confirmed that she understood the terms of the plea agreement and had reviewed it with her lawyer.[27] Okpalobi stated that she understood that she was waiving her right to appeal, except under the limited circumstances outlined in the plea agreement.[28] Okpalobi acknowledged that her attorney had advised her of her appeal rights and the effect of waiving her appeal rights.[29] The Court specifically confirmed that Okpalobi understood the terms and conditions of the plea agreement and that she had not been

---

[23] R. Doc. 262 at 3.
[24] R. Doc. 533 at 5-6.
[25] *Id.*
[26] *Id.* at 23-24.
[27] *Id.* at 13-14.
[28] *Id.* at 23-24.
[29] *Id.* at 24.

10

induced or persuaded to plead guilty because of any promises or threats made by anyone.[30]  Okpalobi's attorney stated he was satisfied that Okpalobi was pleading guilty voluntarily, understandingly, and with full knowledge of the consequences of her plea.[31]  Later, the Court again asked and Okpalobi confirmed that she understood the consequences of pleading guilty and was pleading guilty knowingly and voluntarily.[32]  Okpalobi's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977).  The Court finds that Okpalobi fully understood the waiver of her right to appeal and the waiver of her right to file post-conviction motions when her plea was accepted.

In all, Okpalobi reserved the right to bring an ineffective assistance of counsel claim only to the extent that she claims the ineffective assistance "directly affected the validity" of her entering the plea agreement and waiving her appeal rights.  *See United States v. White*, 307 F.3d 336, 341 (5th Cir. 2002) (a defendant's waiver of appeal in a plea agreement "may not be enforced against a Section 2255 petitioner who claims that ineffective assistance of counsel rendered *that waiver* unknowing or involuntary" (emphasis in original)).  In other words, Okpalobi's ineffective assistance of

---

[30]     *Id.* at 14.
[31]     *Id.* at 26.
[32]     *Id.* at 30.

counsel claims survive her waiver of appeal "only when the claimed assistance directly affected the validity of that waiver or the plea itself." *Id.* at 343.

## C.  Substantive Claims

### 1.  *Ineffective Assistance of Counsel*

Okpalobi brings two separate ineffective assistance of counsel claims. Her first claim involves the conduct of Lance Unglesby, her first attorney whom she retained before she was charged in the second superseding indictment.[33] Okpalobi states that she retained Edward J. Castaing, Jr. as counsel in or around 2010, after FBI agents arrived at her office and seized patient files.[34] Mark Morad, Okpalobi's eventual co-defendant who was also charged and sentenced in connection with the government's investigation, retained Castaing in early 2013 when he was served with a grand jury subpoena.[35] Okpalobi claims that because of this conflict, she retained Unglesby in March 2013, and Morad paid Unglesby's legal fees.[36]

On May 9, 2013, the government handed down its first indictment, which named Morad but not Okpalobi.[37] According to Okpalobi, the

---

[33]  *See* R. Doc. 864-1 at 5.
[34]  *Id.* at 4.
[35]  *Id.*
[36]  *Id.* at 5.
[37]  R. Doc. 1.

government then turned over thousands of documents to Castaing and Morad.[38] Okpalobi claims that, because Morad had little understanding of the documents, Castaing asked Unglesby to make Okpalobi available to them to help explain the "meaning, context, and significance" of the documents.[39] According to Okpalobi, Unglesby "directed" her to cooperate with Castaing and Morad, and to speak with them whenever they had questions, which she did.[40] She states that there was no joint defense agreement between the parties.[41]

Okpalobi alleges that during Morad's later negotiations with the government over his plea bargain, Morad "divulged knowledge" about her "that he obtained while she assisted him and his lawyer."[42] On September 25, 2014, she was named in the second superseding indictment. Okpalobi does not state in her petition the specific information she provided Castaing and Morad; nor does she identify the information that she believes Morad disclosed to the government. Okpalobi nevertheless asserts that by permitting her to speak with Castaing and Morad without a joint defense agreement, Unglesby's performance was constitutionally deficient, and that

---

[38] R. Doc. 864-1 at 5.
[39] *Id.* at 5.
[40] *Id.* at 6.
[41] *Id.*
[42] *Id.* at 8.

but-for his performance, the outcome of her proceeding would have been different.

This claim fails for at least two reasons. First, in her plea agreement she waived any right to bring this claim. As already addressed, Okpalobi waived any ineffective assistance of counsel claim except a claim that her counsel's deficient performance "directly affected the validity of [her] waiver or the plea itself." *White*, 307 F.3d at 343. Okpalobi has offered no explanation for how Unglesby's actions before she was indicted affected the validity of her waiver of appeal and collateral challenge rights or the validity of the guilty plea. *See id.* at 344. (holding plea agreement waived petitioner's right to challenge his sentence under section 2255 and thus barred his claim of ineffective assistance at sentencing). The Court therefore finds that Okpalobi's ineffective assistance claim regarding Unglesby's alleged actions is subject to waiver, which cannot be evaded. *See United States v. Brown*, No. 11-288, 2017 WL 497671, at *5 (E.D. La. Feb. 7, 2017) (finding that attorney's alleged deficient performance before the plea stage was waived).

Second, even if Okpalobi had not waived her right to bring this claim, her ineffective assistance of counsel claim would fail because it is grounded in her counsel's allegedly deficient performance before she was indicted. "[A] defendant has no constitutional right to the effective assistance of

counsel" in the absence of a right to counsel. *United States v. Ewing*, 334 F. App'x 697 (5th Cir. 2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). "The Supreme Court has held that the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant." *Id.* at 698 (internal quotation marks omitted). "Adversary judicial proceedings may begin by way of a formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* (internal quotation marks omitted). Here, Unglesby's alleged deficient performance occurred before Okpalobi was named in the second superseding indictment, and therefore before any adversarial judicial proceedings against her began. Because Okpalobi did not have a right to counsel at this time, she cannot bring a claim for ineffective assistance of counsel for Unglesby's performance.

Okpalobi's second ineffective assistance of counsel claim concerns the performance of Ralph S. Whalen, Jr., whom she hired on October 6, 2014, after she was named in the second superseding indictment.[43] Okpalobi claims that she wished to go to trial, but that Whalen "repeatedly told her that she could not win," and that she should accept the government's plea

---

[43]     R. Doc. 864-1 at 7; R. Doc. 927 at 3-6.

deal.[44]  She further claims that Whalen "threatened her . . . in front of her family that if she did not accept the plea, she would receive 13 years."[45] Okpalobi does not allege that Whalen ever promised her what sentence the Court would impose if she were to accept the government's plea deal.

Okpalobi did not waive this ineffective assistance claim in her plea agreement, because the claim goes directly to the validity of her guilty plea and appeal waiver.  But Okpalobi's claim nevertheless fails under both prongs of the *Strickland* test.

First, she does not show that Whalen's advice that she accept the plea deal was deficient or erroneous.  Okpalobi effectively alleges that Whalen advised her that she could not win at trial, and that she was likely to receive a more lenient sentence if she accepted the government's deal.  Based on the record, it is true that Okpalobi's decision to plead guilty led to a more lenient sentence than if she had gone to trial and lost.  In her plea agreement, the government agreed to drop two of the counts from the superseding

---

[44]    R. Doc. 927 at 4.

[45]    *Id.*  Any claim that her guilty plea was not voluntary because Whalen "threatened" her is unavailing.  At her rearraignment hearing, the Court asked Okpalobi whether she had been "influenced, induced, or persuaded in any manner to plead guilty because of any threats made to [her] by anyone." R. Doc. 533 at 14.  Okpalobi responded "no."  *Id.*  These declarations in open court are presumed to be truthful and "constitute a formidable barrier in any subsequent collateral proceedings."  *See Blackledge*, 431 U.S. at 74.  Okpalobi has provided no evidence to overcome this barrier.

indictment, and also support a full three-level reduction in her base offense level because of her timely acceptance of responsibility.[46] By doing this, Okpalobi reduced both her base offense level in the sentencing guidelines and the statutory maximum term of imprisonment to which she could be subject. Reducing the statutory maximum punishment was significant, because after accepting the plea agreement Okpalobi's advisory guideline range was significantly greater than the statutory maximum term of imprisonment the Court could impose.[47]

Whalen's advice could have been erroneous or deficient if there were evidence that Okpalobi had a strong chance of succeeding at trial. But Okpalobi has not provided any evidence that would exonerate her. There is in fact no reason to believe Okpalobi would have been successful at trial, considering the substantial amount of evidence the government set forth in her factual basis, and the numerous other guilty pleas and trial convictions the government secured from Okpalobi's co-defendants.[48]

Second, for similar reasons, Okpalobi fails to show how she was prejudiced by Whalen's allegedly deficient advice. Whether a petitioner can argue persuasively that she was prejudiced by erroneous advice depends

---

[46] R. Doc. 262 at 1-2.
[47] R. Doc. 432 at 30.
[48] *See* R. Doc. 263.

partly on her chances for success at trial. *See Magnum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Armstead v. Scott*, 37 F.3d 202, 210-11 (5th Cir. 1994) (noting that strong evidence of defendant's guilt and longer potential sentence if convicted refuted defendant's assertion that but for counsel's advice, he would have rejected the plea bargain). Again, the evidence in Okpalobi's factual basis was substantial, and many of her co-defendants had already pleaded guilty. Under such circumstances, her chances of success at trial were unlikely. *See United States v. Givens*, No. 01-282, 2005 WL 2060900, at *4 (E.D. La. Aug. 22, 2005) (finding defendant not prejudiced by allegedly erroneous advice because his co-conspirators had already been convicted and the evidence against him was "substantial"). In addition, as already addressed, by pleading guilty Okpalobi received a reduction in both her statutory maximum sentence and base offense level under the sentencing guidelines. Okpalobi has provided no evidence to suggest that but-for Whalen's advice that she enter the plea agreement, she would have decided to proceed to trial. The Court finds no convincing reason to conclude otherwise.

Okpalobi has therefore failed to demonstrate either Whalen's deficient performance or any prejudice, and her claim that Whalen rendered ineffective assistance that invalidates her plea or her appeal waiver must fail.

## 2. *Not Competent at Rearraignment Hearing*

Okpalobi separately argues that at her rearraignment hearing she was "unable to give competent responses to the Court and therefore entered into the plea agreement unknowingly" and "at the direction of her attorney."[49] Because this argument also addresses the validity of Okpalobi's plea and appeal waiver, she did not waive her right to bring this claim in a Section 2255 motion.

Okpalobi specifically argues that at the time of her hearing, she had a "fragile mental state," and that "shortly after" her guilty plea she had a "fourteen day stay at a psychiatric hospital."[50] She claims that before her hearing she had a mental health evaluation with a Dr. Jensen, who was aware of her "fragile mental state."[51] Okpalobi offers no specific information regarding her sessions with Dr. Jensen, or what if any diagnosis Dr. Jensen had made.

The Court assessed Okpalobi and her mental state at her rearraignment hearing:

**COURT:** Are you now or have you recently been under the care of a doctor or a psychiatrist?

---

[49] R. Doc. 965 at 1.
[50] *Id.*
[51] *Id.*

**OKPALOBI:** A doctor and seeing a psychologist, yes.

**COURT:** Are you taking any medication?

**OKPALOBI:** Yes.

**COURT:** What kind of medication are you taking?

**OKPALOBI:** Cymbalta.

**COURT:** Cymbalta?

**OKPALOBI:** Yes.

**COURT:** Does that affect your judgment?

**OKPALOBI:** No. No, it doesn't.

**COURT:** Are you clearheaded this morning?

**OKPALOBI:** Yeah, I'm fine.

**COURT:** Are you under the influence of any other drugs?

**OKPALOBI:** Just other medical medication like Synthroid.

**COURT:** That's thyroid medication, right?

**OKPALOBI:** Yes. I can't remember the medication for blood pressure and also asthma.

**THE COURT:** Asthma?

**OKPALOBI:** Yes.[52]

---

[52]    R. Doc. 533 at 4-5.

Because of Okpalobi's answers to these questions, the Court determined that Okpalobi's judgment was not impaired and that she was pleading guilty knowingly and voluntarily. Okpalobi has provided no evidence in support of her contention that she was in fact impaired during her hearing. The Court therefore finds that there is no merit to her contention that she did not enter into her plea agreement voluntarily. *See See Blackledge*, 431 U.S. at 74 (declarations in open court are presumed to be truthful and "constitute a formidable barrier in any subsequent collateral proceedings"); *United States v. Urias-Arianas*, 327 F. App'x 468, 469-70 (5th Cir. 2009) (defendant's "sworn representations" that he was not mentally or psychologically impaired, that he was not under the influence of narcotics of medication, and that he understood is waiver of appellate rights, showed that his "guilty plea was knowing and voluntary").

### D. Evidentiary Hearing

The Court finds that an evidentiary hearing is not required, because Okpalobi has failed to produce any "independent indicia of the likely merit of [her] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006); *see also United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 1980) (noting that mere conclusory allegations are not sufficient to support a request for an evidentiary hearing).

## E. Certificate of Appealability

When a district court enters a final order adverse to a petitioner under 28 U.S.C. § 2255, the court must issue or deny a certificate of appealability. Rules Governing Section 2255 Proceedings, Rule 11(a). A court may only issue a certificate of appealability if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "controlling standard" for a certificate of appealability requires the petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented [are] adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). With respect to claims denied on procedural grounds, the petitioner must make a two-part showing: (1) that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling," and (2) that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Johnson v. Quarterman*, 483 F.3d 278, 284 (5th Cir. 2007) (quoting *Slack*, 529 U.S. at 484).

Okpalobi's motion does not satisfy these standards. For the reasons stated in this order, the Court finds that Okpalobi's arguments do not

amount to a substantial showing that her constitutional rights were compromised, nor would they engender any type of debate among reasonable jurists. Accordingly, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Okpalobi's 28 U.S.C. § 2255 motion. The Court will not issue a certificate of appealability.

New Orleans, Louisiana, this \_\_\_\_13th\_\_\_\_ day of June, 2019.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE