UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 13-101 |
| PAIGE OKPALOBI | SECTION "R" (3) |

## ORDER AND REASONS

The Court has received defendant Paige Okpalobi's motion of compassionate release.[1] The government opposes the motion.[2] Because the defendant has not satisfied the requirements for compassionate release, the Court denies the motion.

## I.   BACKGROUND

On March 18, 2015, the defendant pleaded guilty to (1) conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 and (2) conspiracy to falsify records in a federal investigation in violation of 18 U.S.C. § 371.[3]

According to the factual basis that Okpalobi signed, she owned and operated Medical Specialists of New Orleans, Inc. (MSNO) and managed a

---

[1]   R. Doc. 1003.
[2]   R. Doc. 1010.
[3]   R. Doc. 262.

number of other companies.[4] Okpalobi and co-conspirators used those companies "to submit [claims] to Medicare and receive payments . . . electronically."[5] In doing so, Okpalobi submitted claims to Medicare for health services "that were not medically necessary and/or were not provided."[6] In total, MSNO and the other relevant companies submitted fraudulent claims to Medicare amounting to approximately $49,989,323.[7]

This Court sentenced Okpalobi to a term of 162 months' imprisonment, to be followed by 3 years of supervised release.[8] Defendant Okpalobi has served approximately 38 months of that sentence and is currently housed at FMC Lexington, satellite camp, with a projected release date of October 20, 2028.[9] Defendant now moves for a "transfer to home confinement,"[10] citing the compassionate release statute, the CARES Act, her medical history, and the COVID-19 pandemic.

---

[4]  R. Doc. 263 at 1-2.
[5]  *Id.* at 2.
[6]  *Id.* at 3.
[7]  *Id.* at 4.
[8]  R. Doc. 769 at 2-3.
[9]  R. Doc. 1010 at 1.
[10] R. Doc. 1003 at 1.

## II.   DISCUSSION

### A.   Jurisdiction to Transfer

As an initial matter, insofar as Okpalobi asks the Court to "transfer [her] to home confinement,"[11] the Court cannot order that relief. Rather, the decision to order home confinement rests solely with the Bureau of Prisons. *See* 18 U.S.C. § 3621(b) (providing that the "Bureau of Prisons shall designate the place of the prisoner's imprisonment" and that "a designation of a place of imprisonment . . . is not reviewable by any court"); *United States v. Voda*, 994 F.2d 149, 151 (5th Cir. 1993) ("[M]any cases have addressed the authority of a judge to specify the place of incarceration[,]" and "[t]hese cases hold that a court may recommend that a sentence . . . be served in a particular prison or jail, but that only the Bureau of Prisons has the actual authority to designate the place of incarceration.").

Similarly, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281 (2020), provides that "the *Director of the Bureau* [*of Prisons*] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code." *See id.* § 12003(b)(2) (emphasis added); 18 U.S.C. § 3624(c)(1)-

---

11      *Id.*

3

(2) ("The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months . . . under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for reentry," including "home confinement.").

Consequently, courts lack the authority to order home confinement under the CARES Act. *See, e.g., United States v. Reed*, No. CR 15-100, 2020 WL 2850145, at *5 (E.D. La. June 2, 2020) (noting that "nothing in the CARES Act gave district court[s] authority over placement decisions"); *Cordaro v. Finley*, No. 3:10-CR-75, 2020 WL 2084960, at *6 (M.D. Pa. Apr. 30, 2020) ("'[T]he jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons.'") (quoting United States v. Cruz, No. 1:95-CR-204, 2020 WL 1904476, at *6 (M.D. Pa. Apr. 17, 2020)); *United States v. Mabe*, No. 3:15-CR-133, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("This Court . . . does not have power to grant relief under Section 12003 of the CARES Act.").

### B. Compassionate Release

Insofar as Okpalobi asks the Court for relief which it has the authority to provide, the Court does not find compassionate release appropriate in this case.

As a threshold matter, Okpalobi satisfied the exhaustion requirement for compassionate release. The statute provides that a district court may grant compassionate release only if the defendant files the motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or, relevant here, after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Okpalobi took the latter route, sending a request for compassionate release to the warden of FMC Lexington on April 22, 2020.[12] Nothing in the record reflects that the warden responded to this request. Indeed, the Government agrees that "as of May 28, 2020, the warden had not . . . responded."[13] Since more than 30 days have passed since defendant requested compassionate release from the warden, the Court can assess the merits of Okpalobi's motion for compassionate release.

### C. Extraordinary Circumstances

Courts grant compassionate release only when (1) "extraordinary and compelling reasons warrant such a reduction," and (2) "such a reduction is

---

[12] R. Doc. 1012 at 2.
[13] R. Doc. 1010 at 11.

consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i)-(ii). Okpalobi's request for compassionate release fails to satisfy either of these requirements.

Defendant relies primarily upon her medical history to assert that there are "extraordinary and compelling reasons" meriting compassionate release. To be sure, two categories of medical conditions could satisfy the "extraordinary and compelling reasons" standard. Those include (1) "terminal illness[es]" and (2) serious physical or mental conditions "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility." *See* U.S.S.G. § 1B1.13, application note 1. Okpalobi claims she is diagnosed with "[a]sthma, high blood pressure, . . . coronary disease and bronchitis, PTSD and trauma."[14] Defendant's medical records confirm that Okpalobi has a "seasonal" form of asthma for which she is prescribed albuterol.[15] The medical records reflect that as of September 4, 2019, Okpalobi had never been hospitalized because of her asthma.[16] As of February 2020, the defendant manages her asthma with a "rescue inhaler," which she "uses less than weekly."[17]

---

14   R. Doc. 1003 at 3.
15   R. Doc. 1010 at 382.
16   *Id.*
17   *Id.* at 495

6

In addition to asthma, Okpalobi has hypertension. Okpalobi's PSR indicates that she has experienced "heart problems" since 2011, for which she was initially prescribed 12.5 mg of Atenolol once daily.[18] In April of 2017, a radiologist examined Okpalobi's lungs and heart.[19] The report resulting from that examination reflects "[n]o acute cardiopulmonary disease. Lungs are clear. Heart size normal."[20] In April of 2020, Okpalobi was prescribed Atenolol, 25 mg, twice daily, to manage her hypertension.[21]

Okpalobi's conditions do not meet the "extraordinary and compelling" reasons standard set out in the Sentencing Guidelines. Though Okpalobi's conditions are not trivial, they do not, as the Guidelines require, place Okpalobi on an "end of life" trajectory; nor do they amount to a serious medical condition that "substantially diminishes [her ability] to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, application note 1(A).

Okpalobi argues that the specter of COVID-19 threatens to transform two of her health conditions—asthma and hypertension—into life-

---

[18]   R. Doc. 432 at ¶ 138.
[19]   R. Doc. 1010 at 187.
[20]   *Id.*
[21]   *Id.* at 486.

7

threatening ones. But there are no COVID-19 cases in FMC Lexington, satellite camp, where Okpalobi is currently serving out her sentence.[22]

That said, Okpalobi's satellite camp building is adjacent to FMC Lexington, which has had at least 250 COVID-19 positive test results as of June 22, 2020.[23] FMC Lexington's main facility houses 1,167 inmates.[24] The BOP also reports, however, that there are currently only 27 active cases at FMC Lexington, with more than 220 inmates recovered.[25]

Okpalobi argues that COVID-19 could spread from FMC Lexington to the satellite camp because the two buildings share "the same staff."[26] But the 27 active cases at FMC Lexington consist of only inmates, and no staff currently have a COVID-19 infection.[27] Moreover, in accordance with BOP's policy, "[i]nmates exhibiting signs or symptoms of COVID-19 are placed in isolation."[28] BOP further requires exposed staff "to wear a mask for 14 days

---

[22] *Id.* at 6, 18.
[23] Federal Bureau of Prisons, *COVID-19 Inmate Test Information,* https://www.bop.gov/coronavirus/ (last visited June 22, 2020).
[24] Federal Bureau of Prisons, *Population Statistics,* https://www.bop.gov/mobile/about/population_statistics.jsp (last visited June 18, 2020).
[25] Federal Bureau of Prisons, *COVID-19 Cases,* https://www.bop.gov/coronavirus/ (last visited June 22, 2020).
[26] R. Doc. 1003 at 3.
[27] Federal Bureau of Prisons, *COVID-19 Cases,* https://www.bop.gov/coronavirus/ (last visited June 18, 2020).
[28] Federal Bureau of Prisons, *Correcting Myths and Misinformation About BOP and COVID-19,*

8

after last exposure [and must] perform regular self-monitoring for symptoms, practice social distancing and . . . disinfect and clean their work spaces."[29] Although there might be some interaction between the staff from FMC and inmates in the satellite camp, BOP is taking effective steps to mitigate the risks, as demonstrated by the declining number of active COVID-19 cases in general, and the lack of a single COVID-19 case among the staff.

At the heart of Okpalobi's request is a generalized fear of COVID-19. Her motion for compassionate release states that "COVID-19 will enter into the [satellite] camp, if it[']s not here already."[30] A generalized fear of the virus, by itself, does not rise to an "extraordinary and compelling reason" justifying release. *See, e.g., Raia*, 954 at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Marco Perez-Serrano*, No. 5:13-cv-2, 2020 WL 2754914, at *2 (S.D. Miss. May 27, 2020) ("A generalized fear of contracting COVID-19 does not justify compassionate release.").

---

https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.pdf (last visited June 22, 2020).
[29]   *Id.* at 3.
[30]   R. Doc. 1003 at 3.

Given that Okpalobi's medical conditions are well cared for, and that there are no COVID-19 cases where she is currently held, her medical conditions do not constitute "extraordinary and compelling reasons" meriting compassionate release.

### D. Alternative Grounds for Compassionate Release

Similarly, Okpalobi has not shown that she satisfies the alternative grounds for compassionate release. If a defendant's medical conditions do establish the requisite "extraordinary and compelling reasons," there remain additional considerations that could lead to compassionate release. Specifically, courts may consider a defendant's (b) "[a]ge"—starting at age 65, (c) "[f]amily [c]ircumstances," having to do with a sudden increase in the defendant's caregiving responsibilities, and (d) "other reasons," an open category that can only be defined by the Bureau of Prisons. *See* U.S.S.G. § 1B1.13, application note 1. These alternative grounds, however, do not apply to Okpalobi. The defendant is 63 years old;[31] she has not claimed that her family circumstances have changed; nor has BOP set out "other reasons" that are applicable here.

---

[31] R. Doc. 1010 at 449.

10

Finally, when determining whether to grant compassionate release under 18 U.S.C. § 3582(a)(1)(A), the Court must "consider[] the factors set forth in section 3553(a)." *See* 18 U.S.C. § 3582(a)(1)(A).

Those factors, specifically "need for the sentence imposed . . . to reflect the seriousness of the offense," militate heavily against Okpalobi's compassionate release. Okpalobi participated in a conspiracy leading to more than $49 million in fraudulent health care claims. She has served roughly 38 months of a 162-month imprisonment sentence, which is to be followed by 3 years of supervised release. The Court finds that defendant's sentence would not "reflect the seriousness of the offense" were she released after serving only 23 percent of her term of imprisonment.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES defendant's motion.

New Orleans, Louisiana, this __23rd__ day of June, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE